1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

11
12
13

MYRON GAYLORD BRANDON,

14

Petitioner,

Case No. C05-5417FDB

15

v.

REPORT AND
RECOMMENDATION

16

KENNETH QUINN,

17

Respondent.

**NOTED FOR:**
**December 9th, 2005**

18
19
20

    This 28 U.S.C. § 2254 petition for habeas corpus relief has been referred to the undersigned

21

Magistrate Judge pursuant to 28 U.S.C. § 636 (b) and local Rules MJR 3 and 4.  Petitioner in this

22

action is seeking federal habeas corpus relief pursuant to 28 U.S.C. § 2254.  Petitioner has amended

23

the petition to name Kenneth Quinn as the respondent.  (Dkt. # 22)

24

INTRODUCTION AND SUMMARY CONCLUSION

25

    Petitioner presents the court with one claim that is without merit and two claims that are

26

unexhausted and procedurally barred.  The petition should be dismissed with prejudice.

27
28

REPORT AND RECOMMENDATION- 1

1

FACTS

2

Petitioner challenges a 1999 conviction for robbery in the first degree.  (Dkt. # 21, Exhibit 1).

3

He was sentenced as a persistent offender to life without the possibility of parole.  (Dkt. # 21,

4

Exhibit 1).  The state court of appeals summarized the facts as follows:

5

        On May 10, 1999, Yung Park was working at a handy mart on South 112th Street in Tacoma when Brandon entered the store. According to Park, Brandon

6

looked around him and then approached her. "His one hand was in his pocket and pointed to me, and with his left hand again pointing at me, and asked me to open the

7

cash register drawer." 2 Report of Proceedings (RP) at 76. Park feigned that she did not understand English in hope that another customer would enter the store, but none

8

did. "Since I didn't open the drawer right away, he looked around again with his left hand just as to hit me. So I told him 'okay,' and I opened the drawer." 2 RP at 77.

9

After Park gave him the money, Brandon pointed under the counter and instructed her to hide under there. Park complied. Brandon then left after returning once to tell

10

Park again to get down under the counter. Park clarified at trial that Brandon had both hands in his pockets when he first approached her, that she never saw a weapon,

11

and that she thought he had a gun in his pocket.

12

        After leaving the handy mart, Brandon approached Johnny Pierce and his girlfriend, who were sitting in Pierce's car about to leave from their nearby residence.

13

Brandon explained that his mother was ill and asked if he could get a ride to her house. Pierce agreed; gave Brandon a ride; and when he returned home to find police

14

combing the area, explained to them that he had given a ride and where. Pierce later picked Brandon out of a photomontage, though at trial he expressed reservations

15

about his choice.

16

        While the police were at Brandon's mother's residence, Brandon called. Using her caller ID and a reverse phone directory, the police tracked Brandon to a vacant

17

apartment 22 blocks away. There they found Brandon's clothing but not Brandon. But the officers arrested Brandon the next morning after a citizen reported that

18

Brandon was in an abandoned duplex in Parkland. That same day, another citizen, who lived next to the handy mart, reported finding a jacket and cap in his yard; the

19

items matched the clothing the robber wore the previous night.

20

        Pierce County Sheriff's Deputy Ed Knutson interviewed Brandon, part of which was tape recorded. During the taping, Brandon admitted robbing the handy

21

mart. He claimed, however, that he did not have a gun:

22

        Well, sir, I implied that I had a weapon, but I never had a weapon. I asked the lady to open the cash register. I took the money. Before I

23

left, I asked the lady to lay down, and that was basically it, and I didn't mean to scare the woman. I'm sorry if I did. I didn't pull a gun, have

24

no weapon or nothing. I really, you know, I really feel for the woman and I, you know, it hurts. It hurts. It hurts because I know better. I

25

really know better.

26

2 RP at 151-52. The State also introduced a video surveillance tape of the robbery. The video is of poor quality but apparently shows that the robber placed his hand in

27

his pocket when approaching the counter, pointing that pocket at Park. Later, he uses

28

REPORT AND RECOMMENDATION- 2

his left hand to point at the cash register but his right hand is not visible. And later, he points with his right hand. [Court's footnote 1: The exhibit presented to this court is barely decipherable. Consequently, we derived these facts from counsel's argument at trial. After showing the videotape to the court outside the jury's presence, the prosecutor explained:

> I would argue that when the defendant comes—when the person comes into the store, you cannot see that side of him. In fact, it doesn't appear that is arm is outstretched, which is consistent with her testimony that when he approached that his hand was in his pocket, and that he appeared to be pointing something at her. A short time later he does then reach over, but again, you can't see where his arm was beforehand because of the vantage point as well as because of the quality of the tape at that point.

> THE COURT: I agree. I'm going to deny the motion [to dismiss for insufficiency of the evidence].
> 3RP at 191.]

The trial court instructed the jury on first and second degree robbery, and the jury returned a guilty verdict on the greater offense. At sentencing, the State argued that Brandon had four prior robbery convictions (two in the first degree and two in the second degree). The State presented a fingerprint expert who compared Brandon's prints with those on three of his prior judgments. [Court's footnote 2: He did not have a certified copy of Brandon's 1992 King County second degree robbery conviction to use for comparison, but he verified that the other three matched.] The court found that Brandon was a persistent offender and imposed a sentence of life without the possibility of parole.

(Dkt. # 21, Exhibit 2).

## PROCEDURAL HISTORY

Petitioner filed a direct appeal through counsel and raised the following issues.

1.   Whether the evidence was sufficient to establish Brandon was armed with a deadly weapon for the crime of robbery in the first degree.

2.   Whether the evidence was sufficient to establish Brandon displayed what appeared to be a deadly weapon.

3.   Whether the failure to enter findings of fact and conclusions of law as required by court rule prejudiced Brandon where the court's oral ruling is cursory and Brandon's statements were used against him to obtain a conviction?

(Dkt. # 21, Exhibit 3).  Petitioner also filed a pro se brief and raised the following issues:

1.   Brandon's confession was not voluntary, but the product of coaching and manipulation techniques.

2.   The State failed to give sufficient notice to Brandon, under both State and Federal constitutions.

REPORT AND RECOMMENDATION- 3

3.      The provisions Brandon was sentenced under calling for a preponderance of the evidence standard is unconstitutional.

4.      Brandon was provided ineffective assistance of counsel, when counsel failed to call or present known witnesses or evidence that was identified as being crucial.

5.      The evidence adduced at trial was insufficient to support a conviction for the charge of robbery in the first degree.

(Dkt. # 21, Exhibit 5).  The state court of appeals affirmed the conviction and sentence.  (Dkt. # 21, Exhibit 2).  Petitioner then filed for discretionary review with the state supreme court and raised the following issues:

1.      My Fifth Amendment and Fourteenth Amendment protections against self-incrimination while in custody were violated. [Confession was manipulated by detective after petitioner told detective that his attorney told him not to speak with police].

2.      My Sixth Amendment jury trial and Fourteenth Amendment Due Process rights were violated by the Pierce County Prosecutor's failure to provide adequate notice of intent to seek a persistent offender determination [Includes argument that under <u>Apprendi v. New Jersey</u>, jury was required to find previous convictions beyond a reasonable doubt.]

3.      My Sixth Amendment right to effective assistance of counsel was violated by my appointed criminal counsel. [Counsel (1) failed to argue to the court that petitioner did invoke his right to counsel and against self-incrimination; (2) failed to request a jury determine the validity of prior offenses; (3) failed to present available evidence to prove a diminished capacity defense; and (4) failed to present available witnesses to prove a diminished capacity defense.]

4.      My Sixth Amendment fair trial rights and Fourteenth Amendment Due Process rights were violated at my Pierce County Superior Court trial and sentencing as the testimony and evidence were insufficient to sustain my resultant conviction and the court's sentence.

(Dkt. # 21, Exhibit 7).  The state supreme court denied review without comment. (Dkt. # 21, Exhibit 8).  Approximately eleven months after the state court of appeals mandate had issued, on November 13th, 2003 petitioner filed his first collateral challenge to his conviction and sentence.  (Dkt. # 21, Exhibit 10).  In this personal restraint petition petitioner raised the following issues:

1.      Principles of due process and a right to a jury trial as outlined in <u>New Jersey v. Apprendi</u>. [Petitioner is claiming that the State was required to prove his prior convictions to the jury beyond a reasonable doubt.]

2.      Petitioner's right to have a jury instructed to determine each element of the

REPORT AND RECOMMENDATION- 4

charge beyond a reasonable doubt guaranteed under the Due Process Clause of the Fifth and Fourteenth Amendment to the United States Constitution was violated by the deficient instruction given in the case. My Sixth Amendment right to a fair trial was violated by permitting the state witness to falsely testify known as perjury. [Petitioner essentially arguing that there was insufficient evidence to find him guilty, beyond a reasonable doubt, of robbery in the first degree.]

3. My appointed trial and appellate attorneys were ineffective. This violates my Fifth, Sixth, and Fourteenth Amendment right of due process, my right to a fair trial, and effective assistance of counsel (trial and appeal of right). United States Constitutional Amendments Fifth, Sixth, and Fourteenth; Washington Constitution Article 1 §§ 3, 22.

(Dkt. # 21, Exhibit 10). The court denied the petition and petitioner did not seek discretionary review. (Dkt. # 21, Exhibit 13).

In May of 2004 petitioner filed a second personal restraint petition. The following issues were raise:

1. The trial attorney violated Mr. Brandon's due process rights under the Fourteenth Amendment and Article 1 § 3 of the Washington State Constitution, when she failed to request and hold an evidentiary hearing on aggravating facts, witnesses and a pre-sentence investigation hearing to demonstrate that petitioner had been treated and diagnosed with Paranoid Schizophrenia and Major Depression.

2. Ineffective Assistance of Counsel. (1) counsel failed to request a diminished capacity instruction; (2) counsel failed to point out the inconsistencies in John Pierce and Deputy Heaton's testimony regarding the location of the robbery suspect and that the clothes found did not match the description of those worn by the robbery suspect; (3) counsel failed to point out that the prosecutor knowingly presented perjury; and (4) counsel failed to point out that Ms. Park was unable to identify the robbery suspect.

3. Cumulative Error – Violation of Due Process and the Fourteenth Amendment. Based on coerced confession, inconsistencies in identification of robbery suspect's clothes and appearance and defendant's appearance on arrest, inconsistencies with testimony and videotape regarding placement of the robber's hands, prosecutorial misconduct; and judicial misconduct.

4. Judicial misconduct and prosecutorial misconduct deprived defendant of a fair trial.

(Dkt. # 21, Exhibit 14). The petition was dismissed as time barred pursuant to RCW 10.79.090.

(Dkt. # 21, Exhibit 16). Petitioner did not seek discretionary review.

Petitioner filed his first federal habeas petition on October 19th, 2004. (Dkt. # 21, Exhibit 17). It was not clear at that time if petitioner could return to state court on unexhausted claims and

REPORT AND RECOMMENDATION- 5

1    the petition was dismissed without prejudice. (04-Cv-5617KLS Dkt. # 49).

2          Mr. Brandon has other personal restraint petition currently pending, but in light of the ruling

3    that he is time barred in state court those petitions will not be addressed.

4          Mr. Brandon filed this petition raising the following issues:

5          1.      The Persistent Offender Accountability Act (POAA) is unconstitutional
                   because it permits the sentencing judge to make findings regarding the
6                  underlying facts of prior convictions based on a preponderance of the
                   evidence.
7
           2.      Insufficiency of the evidence.
8

9    (Dkt. # 7).  Respondents counsel notes that in a "memorandum of law in support of the habeas

     corpus petition" filed on October 3rd 2005 petition raises a third claim:
10

11         3.      Application of the POAA to petitioner's conviction violates the Ex
                   Post Facto clause.

12   (Dkt. # 19).  The court did not call for additional briefing and petitioner's memorandum (Dkt. # 19)

13   is not properly before the court.  However, since the respondent has addressed the third issue in

14   responsive briefing the court will consider this issue.

15                                   EVIDENTIARY HEARING

16         If a habeas applicant has failed to develop the factual basis for a claim in state court, an

17   evidentiary hearing may not be held unless (A) the claim relies on (1) a new rule of constitutional

18   law, made retroactive to cases on collateral review by the Supreme Court that was previously

19   unavailable, or (2) a factual predicate that could not have been previously discovered through the

20   exercise of due diligence; and (B) the facts underlying the claim would be sufficient to establish by

21   clear and convincing evidence that but for constitutional error, no reasonable fact finder would have

22   found the applicant guilty of the underlying offense.  28 U.S.C. §2254(e)(2) (1996).  Petitioner's

23   claims rely on established rules of constitutional law.  Further, petitioner has not set forth any factual

24   basis for his claims that could not have been previously discovered by due diligence.  Finally, the

25   facts underlying petitioner's claims are insufficient to establish that no rational fact finder would have

26   found him guilty of the crime. Therefore, petitioner is not entitled to an evidentiary hearing.

27

28   REPORT AND RECOMMENDATION- 6

STANDARD

Federal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension.  Engle v. Isaac, 456 U.S. 107 (1983).  Section 2254 is explicit in that a federal court may entertain an application for writ of habeas corpus "only on the ground that [the petitioner] is in custody in violation of the constitution or law or treaties of the United States."  28 U.S.C. § 2254(a)(1995).  The Supreme Court has stated many times that federal habeas corpus relief does not lie for errors of state law.  Lewis v. Jeffers, 497 U.S. 764 (1990); Pulley v. Harris, 465 U.S. 37, 41 (1984); Estelle v. McGuire, 502 U.S. 62 (1991).

Further, a habeas corpus petition shall not be granted with respect to any claim adjudicated on the merits in the state courts unless the adjudication either  (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the state courts.  28 U.S.C. §2254(d).   A determination of a factual issue by a state court shall be presumed correct, and the applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. §2254(e)(1).

DISCUSSION

Exhaustion of State Remedies.

In order to satisfy the exhaustion requirement, petitioner's claims must have been fairly presented to the state's highest court.  Picard v. Connor, 404 U.S. 270, 276 (1971); Middleton v. Cupp, 768 F.2d 1083, 1086 (9th Cir. 1985).  Petitioner's second claim was presented to the state court of appeals as a state claim and did not notify the court the claim relied on a right secured by the Untied States Constitution.  (Dkt. # 21, Exhibits 3 and 5).  The claim was presented to the state's highest court in the context of a petition for review which was denied without comment.  Respondent notes "[r]aising the issue for the first time in the Washington Supreme Court is insufficient to fully and fairly exhaust the factual issue and legal claim.  Castille v. Peoples, 489 U.S. 346, 351 (1989)( raising a claim in a procedural context in which its merits are unlikely to be

REPORT AND RECOMMENDATION- 7

considered constitutes a lack of fair presentation)".  The court agrees with this analysis and believes

this issue to be unexhausted and procedurally barred.  The issue will be addressed in the alternative

later in this Report and Recommendation.  Petitioner's third issue, regarding the Ex Post Facto

application of the Persistent Offender Accountability Act, was raised in the "memorandum of law in

support of the habeas corpus petition."  This issue was never submitted in state court and is clearly

unexhausted and procedurally barred.

     Procedural Bar.

     Normally, a federal court faced with an unexhausted petition dismisses the petition without

prejudice, so that the petitioner has an opportunity to exhaust the claims in state court.  Here,

however, petitioner is barred from filing in state court as any attempt to file another petition will be

deemed successive and time barred.  See, RCW 10.73.090 and 10.73.140.

     Federal Courts generally honor state procedural bars unless it would result in a "fundamental

miscarriage of justice" or petitioner demonstrates cause and prejudice.  Coleman v. Thompson, 501

U.S. 722, 750 (1991).  Petitioner here cannot show cause and prejudice in state court.

     To show cause in federal court, petitioner must show that some objective factor external to

the defense prevented petitioner from complying with state procedural rules relating to the

presentation of his claims. McCleskey v. Zant, 499 U.S. 467, 493-94 (1991). Here, petitioner has

filed multiple challenges and the time allowed for such filings has simply expired.  Petitioner cannot

show cause that excuses his procedural default in state court.

     On the merits.

     1.    Apprendi.

     Petitioner's first issue, that the Persistent Offender Accountability Act (POAA) is

unconstitutional because it permits the sentencing judge to make findings regarding the underlying

facts of prior convictions based on a preponderance of the evidence is exhausted and will be

considered.

     The state courts denial of this claim was not contrary to clearly established federal law.  The

court of appeals stated:

REPORT AND RECOMMENDATION- 8

Brandon next argues that the State was required to notify him in the criminal information that the faced life in prison as a persistent offender and that it needed to prove his prior convictions to the jury beyond a reasonable doubt. He reasons that any fact that increases his punishment must be charged in the indictment and proven at trial, citing *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L. Ed. 2d 435 (2000).

But our Supreme Court rejected these arguments in *State v. Thorne*, 129 Wn2d 736, 921 P.2d 514 (1996). It held that the State need not plead the defendant's prior convictions in the information that results in a life sentence. Instead, all the constitution and former RCW 9.94A.120(4) require is a sentencing hearing where a trial judge decides by a preponderance of the evidence whether the prior convictions exist. Former RCW 9,94A,110(1) (2000); *Thorne*, 129 Wn 2d at 782.

(Dkt. # 21, Exhibit 2, page 7 and 8). The court went on to note that the state had presented "conclusive evidence" of three prior convictions and persuasive evidence of a fourth and all four convictions qualified as "most serious" for sentencing purposes. (Dkt. # 21, Exhibit 2 page 8). Petitioner was sentenced in April of 2000. Apprendi, which forms the basis for this claim, was decided in June of 2000. Apprendi v. New Jersey, 530 U.S. 466 (2000). Apprendi does not apply retroactively. Rees v. Hill, 286 F.3rd 1103 (9th Cir. 2002). This issue is without merit.

2.    Sufficiency of the evidence.

While the court has found this issue to be unexhausted and procedurally barred, it will also address the issue on the merits. The state court noted:

On May 10, 1999, Yung Park was working at a handy mart on South 112th Street in Tacoma when Brandon entered the store. According to Park, Brandon looked around him and then approached her. "His one hand was in his pocket and pointed to me, and with his left hand again pointing at me, and asked me to open the cash register drawer." 2 Report of Proceedings (RP) at 76. Park feigned that she did not understand English in hope that another customer would enter the store, but none did. "Since I didn't open the drawer right away, he looked around again with his left hand just as to hit me. So I told him 'okay,' and I opened the drawer." 2 RP at 77. After Park gave him the money, Brandon pointed under the counter and instructed her to hide under there. Park complied. Brandon then left after returning once to tell Park again to get down under the counter. Park clarified at trial that Brandon had both hands in his pockets when he first approached her, that she never saw a weapon, and that she thought he had a gun in his pocket.

(Dkt. # 21, Exhibit 2). When petitioner was interviewed by Pierce County Sheriff's Deputy Ed Knutson he stated "Well, sir, I implied that I had a weapon, but I never had a weapon." (Dkt. # 21, Exhibit 2). Finally the video tape of the incident showed petitioner placing his hand in his pocket approaching the victim and pointing his pocket at her as if he has a gun. (Dkt. # 21, Exhibit 2).

REPORT AND RECOMMENDATION- 9

1    The state court held:

2         RCW 9A.56.200 defines first degree robbery:
          1.    A person is guilty of robbery in the first degree
3               if in the commission of a robbery or of
                immediate flight therefrom, he;
4         (a)   Is armed with a deadly weapon; or
          (b)   Displays what appears to be a firearm or other
5               deadly weapon; or
          (c)   Inflicts bodily injury.
6
          Here the only question is whether the evidence satisfied section (1)(b).  This
7    same question arose in *State v. Barker*, 103 Wn. App. 893, 14 P.3d 38
     (2000)(sufficient evidence where defendant said he would shoot store clerk and he
8    pressed an object in her back), *review denied*, 143 Wn. 2d 1021 (2001); *State v.*
     *Kennard*, 101 Wn App. 533, 2 P.3d 38 (sufficient evidence where defendant
9    demanded money, stated he had a gun, patted his pocket, and told teller he knew
     where she lived), *review denied*, 142 Wn. 2d 1011 (2000); and *State v. Henderson*,
10   34 Wn App. 865, 664 P.2d 1291 (1983)(sufficient evidence where defendant had
     right hand concealed in pocket when demanding money).
11
     (Dkt. # 21, Exhibit 2, pages 4 and5).
12
          Evidence is sufficient to support a criminal conviction if the record reasonably supports a
13
     finding of guilt beyond a reasonable doubt.  <u>Jackson v. Virginia</u>, 443 U.S. 307, 320 (1979).  The
14
     question is whether, after reviewing the evidence in the light most favorable to the prosecution, any
15
     rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.
16
     <u>Id.</u>, <u>citing</u> <u>Johnson v. Louisiana</u>, 406 U.S. 356, 362 (1972).  The state courts' finding of sufficient
17
     evidence in this case is based on petitioners placing his hand in his pocket and pointing the pocket at
18
     the victim while demanding she open the cash register.  (Dkt. # 21, Exhibit 2).  Petitioner admitted
19
     his physical actions implied he had a gun.  The evidence was sufficient and the state court finding is
20
     not contrary to clearly established federal law.  This issue is without merit.
21
                                         <u>CONCLUSION</u>
22
          Based on the foregoing discussion, the Court should **DISMISS** the petition **WITH**
23
     **PREJUDICE.**  A proposed order accompanies this report and recommendation.
24
          Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal rules of Civil Procedure, the
25
     parties shall have ten (10) days from service of this Report to file written objections.  *See also* Fed.
26
     R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of
27

28   REPORT AND RECOMMENDATION- 10

appeal.  <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **December 9th, 2005** as noted in the caption.

DATED this 16th day of November, 2005.


Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION- 11